## Proctor Coal Co. v. Beaver's Admr.

(Decided January 31, 1913.)

### Appeal from Whitley Circuit Court.

1. Foreign Law—Action for Damages Controlled by **Law of State** where Accident Occurred.—The right to recover damages for personal injuries or for death, caused by the wrongful act of another in Tennessee, is controlled by the law of Tennessee.

2. Action—Abatement of Under Tennessee Statute.—The right of action for personal injuries or death caused by the wrongful act of another in Tennessee, does not abate under the law of Tennessee by the death of the person injured, but passes to his widow, and in case there is no widow, to his children or to his personal representative for the benefit of his widow or next of kin, free from the claims of creditors.

3. Action—Action for Injuries and Death May be Joined Under Tennessee Statute.—Where a person's death is caused by the wrongful act of another in Tennessee, and suit is brought for damages, as provided by the laws of Tennessee, the party shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased for the personal injuries, and also the damages resulting to the party for whose use and benefit the right of action survives from the death consequent upon the injuries received.

4. Joinder of Actions—Tennessee Statute.—Where a person was injured in Tennessee by the negligence of another, and he brought an action in Kentucky under the Tennessee law for personal injuries during his lifetime, and subsequently died, and the action was revived in the name of his administrator, it was proper to permit the widow to file her petition in said action, for damages for the death of her husband, and to recover jointly with the

administrator a judgment for the personal injuries and the death of her husband.

5. Negligence—Contributory Negligence Under Tennessee Laws.— Under the laws of Tennessee, remote contributory negligence on the plaintiff's part will not bar his recovery of damages for per-. sonal injury, but will reduce his damages according to the amount of the contributory negligence; but, if both plaintiff and defendant are guilty of direct or proximate contributory negligence, the negligence on the plaintiff's part will bar his recovery.

6. Evidence—Mortality Tables.—The mortality tables showing the. expectancy of life are admissible in evidence in actions to recover damages for personal injuries, or for death, for the purpose of showing that the plaintiff's capacity to earn money has been impaired or destroyed.

7. Master and Servant.—Safe Place to Work.—The rule which makes it the duty of the employer to furnish its employee a safe place to work, is usually applied to a permanent place of work, and not to such places as a room in a coal mine, which is constantly shifting and being transformed as the direct result of the employee's labor.

J. N. SHARP,.for appellant.

H. B. BROWN, R. S. ROSE and S. S. LAWSON, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This action was originally filed by Dock Beaver against the appellant for personal injuries received by Beaver, an experienced miner, while he was digging coal in appellant's mine at Indian Mountain, in Tennessee, immediately beyond the boundary line between Kentucky and Tennessee. The main entry of the mine is in Kentucky, but the accident occurred at a point south of the boundary line.

The accident occurred in January, 1910, and Beaver subsequently died on April 19, 1911. He and Bean, his "buddy," were working in a room mining coal, by the ton. About noon on the day of the accident Beaver fired a "shot" which appellant claims was so large, and improperly placed, that it knocked down three or four of the props of the mine and dislodged a block of slate about 7 feet long, by 5 feet wide, and perhaps 6 inches in thickness, which fell upon Beaver, and so badly crushed his left arm that amputation became necessary. Bean, the only eye-witness to the accident, gave the following account of it:

"Q. 4 Who were you working with, if anybody?
A. Dock Beaver and I were working together.
Q. 5 What do you mean by working together?
A. Him and I working in the same room.

Q. 6  State whether or not you were what was known as "buddies" in the mine together?

A.       Yes, sir.

Q. 7  State whether you were present when he was hurt; if so, tell what you know about it?

A.       Yes, sir; I was present. It was noon and we had an empty car. I was loading the car and Mr. Beaver asked me if we had not better put a prop over there. I told him, 'yes, I expect so'; and he squatted down after he had brought the prop and laid it down, and went to scratching out a place to set the prop and the rock fell on him.

Q. 8  How large was the stone that fell on him?

A.       I think it was nearly square, between four and five feet square.

Q. 9  State what position he was in when it struck him, and how it injured him, if at all?

A.       He was squatting down; had his arm laying on the prop and the slate about cut his arm off, just left a little piece."

On August 29, 1910, Beaver filed this action to recover damages for his injuries, which he alleged had been caused by the gross carelessness and negligence of appellant, its agents and servants, laying his damages at $1,995.00. After Beaver's death the action was revived in the name of his administrator, who, in an amended petition, sought to recover $10,000.00 damages for the death of Beaver. Upon the court requiring the plaintiff to elect which cause of action he would prosecute, the administrator elected to prosecute the action for injuries, pain, and mental anguish and suffering as set forth in the original petition, and dismissed so much of his amended petition as sought to recover for Beaver's death.

Subsequently, Maggie Beaver, the widow of Dock Beaver, presented her pleading and asked to be made a party plaintiff, and that she and the administrator recover the sum of $10,000.00 for the death of her husband. The court declined to permit this pleading to be filed when it was first presented, but subsequently, during the trial, the court allowed it to be filed, in order that the pleadings might conform to the proof. Mrs. Beaver rested her right to sue under section 4025 of Shannon's Tennessee Code of 1896, which was pleaded, and which reads as follows:

"The right of action which a person who dies from

injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrong-doer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and in case there is no widow, to his children or to his personal representative for the benefit of his widow or next of kin, free from the claims of creditors.''

She also pleaded section 4026 of the same compilation, which provided that the action might be instituted by the personal representative of the deceased, or by his widow and children in case the personal representative declined to sue, and that the widow might use his name in bringing and prosecuting the suit without his consent.

And she also set up section 4027 of said statute, which provided that the action might also be instituted by the widow in her own name, or, if there be no widow, by the children; and section 4028 of the Tennessee Code, which provides as follows:

''If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin free from the claims of the creditors of the deceased, to be distributed as personal property.''

She further pleaded section 4029 of the Tennessee Code which provides:

''Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided by sections 4025 and 4027, inclusive, the party shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased for the personal injuries, and also the damages resulting to the party for whose use and benefit the right of action survives from the death consequent upon the injuries received.''

Finally, she pleaded certain sections of the Tennessee Statutes relating to the regulation and inspection of mines, and the qualifications and duties of mine foremen required to be employed in every mine.

The trial resulted in a verdict for $2,000.00, upon which a joint judgment was entered in favor of the administrator and Maggie Beaver, as surviving widow, and from that judgment the defendant prosecutes this appeal.

As grounds for reversal, the appellant insists: (1) That a peremptory instruction should have been given, both upon the pleadings and the evidence; (2) that the life tables were improperly admitted in evidence; (3) that the administrator had no right to recover for the death of Beaver, and that the widow was not a proper party; and (4) for error in the instruction. We will consider these grounds in the order given.

1. It is insisted that the original petition was fatally defective because a recovery could only be had under the law of Tennessee, which was not pleaded, and that there should have been a peremptory instruction for appellant for that reason. It will be remembered, however, that the law of Tennessee, which allowed an action to be brought in case of injury or death, was not only fully set forth in the pleading of Maggie Beaver, but was proved by competent evidence. If, therefore, she was a proper party, this ground is not well taken; and, that she was a proper party fully appears from the text of the Tennessee Statutes above quoted.

It is further contended that under the Tennessee Statute set out in the answer, it is the duty of the miner to prop the roof of his room and keep his place in a safe condition; and, that being true, in order to make the petition good, it should show whose duty it was to look after the coal mine and work place, or circumstances that would enable the court to know whose duty it was, whether of the miner or the owner, to keep the place in a safe condition. This defect, if it was a defect, is fully met by the allegations of the pleading of Maggie Beaver, setting up the Tennessee Statute, which, among other things, imposes upon the mine foreman the duty of keeping a careful watch over the entries and timbers, and to see that all dangerous slate or rock overhead is taken down and secured against falling, and that sufficient props, caps and timbers are kept at some convenient point near the mine entrance, and which shall be hauled to the mouth of the room or face of the entry whenever required by the miner. The answer pleads the Tennessee Statute, which provides as follows:

"Any miner having charge of his working place in any coal mine or colliery, who shall neglect or refuse to keep the roof thereof properly propped and timbered to prevent the falling of coal, slate or rocks, every such person or persons shall be deemed guilty of a misde-

meanor, and upon conviction, shall be punished by imprisonment and fine at the discretion of the court trying the case.''

It is insisted under this Statute, that a peremptory instruction should have gone for the defendant because Beaver was guilty of gross negligence in using so large a charge of powder in ''shooting'' the coal as to knock down the props and dislodge the slate in the roof, and that this fact constitutes a bar to his right to recover. The law upon that subject in Tennessee, has been proved at great length, and substantially complies with the statement of the law as laid down by this court in L. & N. R. R. Co. v. Whitlow's Admr., 114 Ky., 479, where we said:

''Under the Tennessee law, if the intestate was himself guilty of negligence that contributed to his injury and death, yet if the defendant was guilty of negligence, which was the direct and proximate cause of the intestate's injury and death, then the plaintiff is entitled to recover, but the damages recoverable should be reduced or mitigated by reason of the intestate's contributory negligence. Under our law, if the intestate was guilty of such contributory negligence except for which his injuries and death would not have occurred, then there can be no recovery. Contributory negligence, under our rule, is never applied to the mitigation of damages.''

Or, as stated by one of the witnesses, whenever there is negligence on the part of the plaintiff contributing directly, or as a proximate cause, to the occurrence from which the injury arises, such negligence will prevent the plaintiff from recovering. Under the Tennessee rule, remote contributory negligence on the plaintiff's part will not bar his recovery, but will reduce his damages according to the amount of the contributory negligence; but if both plaintiff and defendant are guilty of direct or proximate contributory negligence, the negligence on plaintiff's part will bar his recovery.

See, also, I. C. R. R. Co. v. Jordan, 117 Ky., 512, where the same doctrine was reannounced after an elaborate examination of the Tennessee Statutes and decisions.

The weight of the evidence sustains appellant's contention, that Beaver was negligent in ''shooting'' the coal and that this negligence was the proximate cause of his injury and death. The charge of powder was so

heavy that it not only knocked down three props that stood under the roof, but it also knocked down between two or three hundred pounds of slate from the roof. This left the situation so dangerous that Beaver asked Bean if it would not be better to prop over the dangerous place, and Beaver was injured while attempting to carry out his own suggestions. It was Beaver's duty to prop his room, and in failing to do so, he violated the law. His own negligence was the proximate and direct cause of his injury, and for that reason a peremptory instruction should have been given.

It is insisted, however, that appellant's failure to furnish Beaver with sufficient and necessary cross timbers with which to properly prop his room was the proximate cause of the accident. This, however, does not sufficiently appear. The evidence is ample that props, caps, and other timbrs were in an adjoining space, and Bean is the only witness who says that Parry, the mine foreman, refused to supply Beaver with proper cross pieces; and he admits that cross pieces of a kind, were furnished, and that no attempt was made to use any in this particular place. Parry not only denies the charge, but says it was not necessary to have cross pieces, to protect that particular piece of slate. If, upon another trial, it should be made to satisfactorily appear that appellant did refuse to furnish the necessary cross pieces, and that said failure was the proximate cause of the accident, a peremptory instruction would not be proper.

2. The objection to the admission of the life tables is based upon the idea that while ordinarily the mortality table is competent evidence in a suit for damages for the death of a person, it is not competent in an action for permanent injuries. This question, however, was reviewed at some length in I. C. R. R. Co. v. Houchins, 121 Ky , 532, where we said:

"When an action is to recover for the death of a person injured, as the measure of recovery is the value of his capacity to earn money, standard tables, showing the ordinary expectancy of life, are held to be competent. Where, as in this case, there is proof tending to show that the plaintiff's capacity to earn money is impaired or partially destroyed, the probable expectancy of life is equally competent; for the measure of recovery here is in part compensation for the impairment of his capacity to earn money. If, as is conceded, evidence of the ordi-

nary expectation of life may be received where the capacity to earn money is destroyed by death, it is hard to see why such evidence can not be equally received where the capacity to earn money is partially destroyed; for in either case the jury are, in making up their verdict, to be governed by the capacity to earn money which has been destroyed, and whether this is a partial or total destruction is not material. (Greer v. L. & N. R. R. Co., 94 Ky., 169, 14 Ky. L. R.. 876, 21 S. W., 649, 42 Am. St. Rep., 345.)"

There was no error here.

3. The statute of Tennessee gives the joint right of recovery to the administrator and the widow, and expressly provides that the recovery shall be for the benefit of the widow. It will thus be seen that the statute covers the entire field of the recovery, part of it being in the name of the administrator, and part of it in the name of the widow in case the administrator should not sue for the death, and the recovery in either event to be for the benefit of the widow. Clearly, he had a right to sue, and she was a proper party.

4. Finally, it is insisted that the instructions are erroneous. It is first objected that the first instruction improperly advised the jury that it was the duty of the defendant company to furnish the plaintiff a reasonably safe place in its mine in which to work. The general rule of law, which makes it the duty of the master to furnish the servant with a safe place to work, does not apply to a case of this character, and the first instruction which made it the duty of the defendant to exercise ordinary care to furnish plaintiff a reasonably safe place in its mine in which to dig, mine and remove coal, was error. This instruction further made it the duty of the defendant, through its bank foreman, to provide plaintiff with suitable means and appliances with which to do his work, and to make secure his working place. In support of its contention, appellant has pleaded and proved the law of Tennessee as laid down in Heald, Receiver, v. Wallace, 109 Tenn., 364, which reads as follows:

"It is argued, however, on behalf of the plaintiffs below, that it was the duty of the company to furnish its employees a safe place to work, and that the breach of this duty was the proximate cause of the accident for which the defendant company is liable. We do not think this rule of the common law applicable in such a case.

The principle invoked is usually applied to a permanent place, and not to such places as are constantly shifting and being transformed as the direct result of the employee's labor."

In that case the plaintiff was a miner, and had come to his death in a manner very similar to that in which Beaver was injured. Moreover, there was no evidence in this case tending to show that the room in which Beaver was working was not a reasonably safe place, considering the character of his work. The case was tried upon the theory that the appellant had failed to furnish Beaver with sufficient and suitable cross timbers, as it is required to do by the Tennessee statute. That, however, if true, was an entirely different ground of negligence, to be presented by an instruction suitable to the charge. The first instruction was erroneous in this respect.

As this case will have to go back for a new trial, it is proper to say that the phrase "and that but for his own negligence and carelessness he would not have been injured," found in the closing lines of the third instruction, is tautological, and should have been omitted.

The fourth instruction was unnecessary and should have been omitted.

Judgment reversed, and action remanded for a new trial.